UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-81718-Civ-Ruiz/Reinhart

LYNN A. HARRISON,

        Plaintiff,

v.

ANDREW SAUL,
Acting Commissioner of
Social Security Administration,

        Defendant.
_____/

## REPORT AND RECOMMENDATION REGARDING PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NO. 15, 17)

Currently before the Court are the parties' cross-motions for summary judgment (ECF No. 15, 17), which the Honorable Rodolfo A. Ruiz referred to me for appropriate disposition. In addition to the motions, the Court has reviewed Plaintiff Harrison's Statement of Material Facts (ECF No. 16) and her response/reply papers. ECF No. 19. The issue is whether the record contains substantial evidence to support the denial of disability benefits to Ms. Harrison.

For the reasons stated below, I find that there is substantial evidence to support the denial of disability benefits to Ms. Harrison. Accordingly, I **RECOMMEND** that her Motion for Summary Judgment (ECF No. 15) be **DENIED** and Defendant's Motion for Summary Judgment (ECF No. 17) be **GRANTED**.

## **BACKGROUND**

On November 25, 2015, Harrison filed an application for disability insurance benefits (DIB), alleging a period of disability beginning on May 14, 2013. R. 74.[1] Based on Harrison's earnings record, she acquired sufficient quarters of coverage to remain insured through September 30, 2015 ("the date last insured"). Thus, she must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. R. 75.

Harrison had a hearing before an Administrative Law Judge (ALJ) on July 25, 2018. The ALJ denied Harrison's application for benefits in a decision dated November 27, 2018 (R. 74-88), and the Appeals Council denied Harrison's request for review on October 25, 2019. R. 1-3.

The record contains the following facts adduced from Harrison's testimony at the hearing, her treatment records, the opinions of her treating physicians and state agency consultants, as well as a vocational expert.

*Ms. Harrison's Testimony*

Ms. Harrison is divorced with three grown sons; she lives alone in a 2-story townhouse and drives to her doctor appointments. R. 18-19. She has an associate's degree in computer science. R. 20. Ms. Harrison has worked as a travel agent, medical assistant, jewelry salesperson, scheduler and receptionist. R. 20-24. Ms. Harrison last worked as a receptionist in 2015, but she left that job because of "memory, confusion" and being "unable to count money." R. 35. Ms. Harrison testified that she "couldn't do the tasks that they needed me to do." R. 35.

Ms. Harrison testified that her neuropathy, which began ten years ago, is "excruciating" and is the impairment that bothers her the most. R. 25. The neuropathy causes Ms. Harrison to

---

[1] Citations are to the record of the administrative proceeding filed at ECF No. 13.

suffer severe pain in her legs, feet and hands. R. 29. She has trouble walking and testified that she was prescribed a wheelchair in early 2018. R. 29, 34. Ms. Harrison previously suffered from pancreatitis and ketoacidosis, but she testified that the severe pain and nausea associated with those conditions improved in 2016. R. 26-27. Ms. Harrison was diagnosed with diabetes ten years ago and is insulin-dependent. R. 27. She also testified that she has constant pain in her back from ruptured discs caused by a fall 15 years ago. R. 30. According to Ms. Harrison, after approximately 15 minutes of sitting, her tailbone and sciatic nerve start "acting up," but when she stands and walks, the tendons on the bottoms of her feet become inflamed. R. 33. Ms. Harrison testified that she can stand on her right foot for 5-10 minutes, but not at all on her left foot (R. 34), and that she needs to lie down during the day because she is nauseas and in pain. R. 37-38.

*Medical Records*

In December 2014, when she was 52 years old, Ms. Harrison presented at the hospital complaining of chronic back pain and herniated discs. R. 317. A physical examination revealed mild tenderness in her back but found that Ms. Harrison had a full range of motion and was not in acute distress. R. 317. Among other things, Ms. Harrison was diagnosed with neuropathy and acute/chronic back pain and she was sent for an MRI of her spine. R. 318.

1. Diagnostic Imaging Results

On January 12, 2015, Ms. Harrison had an MRI of her lumbar spine, which revealed L4-L5 grade 1 spondylolisthesis, left foraminal narrowing and minimal central stenosis, grade 1 spondylolisthesis, L5-S1 8mm anterior displacement of L5 relative to S1 and multilevel facet joint arthropathy. R. 304-06.

2. Dr. Roberto Duran

Ms. Harrison first saw her treating physician, Dr. Duran, a pain specialist, in July 2013, complaining of neck and back pain stemming from a 2002 fall down a flight of stairs. R. 272. The medical records indicate that Harrison saw Dr. Duran monthly between January 11, 2015 through March 14, 2018 to monitor the pain medication she took for her chronic pain syndrome in her back, neck and legs. R. 330-344, 407-482, 520-524.

In February 2015, Harrison reported an average pain level of 7 out of 10, but Dr. Duran's treatment notes also include Harrison's statement that her medication provided her with 80% pain relief and improved her function by 80%; the treatment notes also state that she was able to "carry on with activities of daily living." R. 424. Dr. Duran's physical examination of Harrison revealed "pain on palpitation . . . with several tender points in low back and neck," as well as "pain on active and passive range of motion of the lower back and neck," which caused a decreased range of motion, but Dr. Duran concluded that Harrison was "not in acute distress." R. 425.

In April 2015, Harrison reported no change in her pain level, but indicated that her medication continued to provide 70% pain relief and also improved her function by 70%. R. 439. Harrison told Dr. Duran that she flew to California to visit her son, but that her neuropathy worsened during her visit. R. 439. Dr. Duran noted that Harrison was wearing a back brace and sought to have an injection. R. 439.

In May 2015, Harrison again reported an average pain level of 7 out of 10, but she stated that her medication was providing 70% pain relief and also improved her function by 70%. R. 442. Again, she requested to receive an injection due to a constant dull ache in her legs and hips. R. 442.

By June 2015, Harrison's pain had decreased to a level 6 and her medication was providing pain relief and improved function of 70-80%.  R. 448.  By August 2015, Harrison's pain had returned to a level 7.  R. 454.  Her medication was providing about 70% pain relief and improving her function about 60%.  R. 454.

Dr. Duran's treatment notes from Harrison's visit in October 2015 reflect that she complained of worsening chronic pain syndrome and muscle spasms, but Harrison told Dr. Duran that her medication provided 60-70% pain relief, improved her function by 50-70%, and that her "current regimen is sufficient such that [she] can continue with activities of daily living." R. 330.  Dr. Duran advised Harrison that besides medication, there were "other alternatives to pain control including and not limited to injections, implantation of devices, physical therapy, surgery, and others."  R. 332.

The following month, in November 2015, Harrison reported that her medication was providing 80% pain relief as well as 80% improved function and that her average pain level had decreased to a 5 out of 10.  R. 333.

In December 2015, Harrison reported that her medication provided 80-90% pain relief and 80-90% improved function.  Harrison's chronic pain syndrome and muscle spasms were reported as "stable."  R. 336.  Harrison's treatment notes in January 2016 are similar.  R. 339-341.  By February 2016, Harrison was reporting that her pain relief and function had diminished somewhat to 60-70% improvement and her average pain was at a level 7.  R. 342.  Dr. Duran's treatment notes from Harrison's May 2016 visit are substantially similar.  R. 417-419.

On March 14, 2018, Dr. Duran completed a Disability Impairment Questionnaire.  R. 520-524.  Dr. Duran stated that Harrison experienced daily pain in her neck, lower back and feet.  R. 521.  Dr. Duran opined that Harrison could not sit, stand or walk for more than one hour in an

5

eight-hour workday. R. 522. He opined that Harrison would need to get up from a seated position every 15 minutes and that she could occasionally lift and carry up to 20 pounds. R. 522. Dr. Duran stated that Harrison's prognosis was "guarded," and that he believed her pain would frequently interfere with her ability to concentrate and cause her to be absent from work more than three times per month. R. 523-24.

### 3. FAU Community Health Center

In October 2015, Harrison presented to the FAU Community Health Center for a diabetes checkup and refill of her insulin prescription. R. 349. She reported experiencing 10/10 back pain which prevented her from walking normally. R. 350.

In April 2016, Harrison went for another diabetes checkup. R. 346. The examination revealed that she was in no acute distress and that her gait was normal. R. 347. Harrison was advised about the importance of regular exercise. R. 347.

### 4. Dr. Audrey Goodpasture

Dr. Goodpasture, the state's non-examining consultant reviewed Ms. Harrison's medical records as of July 29, 2016 and completed an assessment of her residual functional capacity (RFC). R. 64-67. Dr. Goodpasture opined that Ms. Harrison could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk about six hours in an eight-hour workday and sit for about six hours in eight-hour workday. R. 64. She further opined that Ms. Harrison could occasionally climb ramps/stairs, never climb ladders, ropes, and scaffolds, occasionally stoop, kneel, crouch and crawl. R. 65-66. Dr. Goodpasture concluded that, based on her assessment of the medical records, Ms. Harrison had no severe physical impairments. R. 64.

*Vocational Expert*

The vocational expert testified that Ms. Harrison's past employment as a travel agent, receptionist and jewelry salesperson were skilled/semi-skills positions with an exertional level of sedentary to light. R. 40. Assuming Ms. Harrison could perform a full range of light work, with some limitations, the vocational expert found that Ms. Harrison could return to any of these three previous jobs. R. 41. In addition, the vocational expert testified that at the light exertional level, Ms. Harrison could also work as a cashier, office worker, and mail clerk. R. 41.

*ALJ's Decision dated November 27, 2018*

The ALJ found that Harrison had the following severe impairments: spine disorder, dysfunction of her major joints, diabetes mellitus, and obesity. R. 77.[2] The ALJ found that these impairments "significantly limit" Harrison's "ability to perform basic work activities" under the federal regulations. R. 77. Nevertheless, the ALJ concluded that Harrison's impairments did not meet the severity of the impairments listed in the federal regulations. R. 79. Specifically, the ALJ found that Harrison's history of neck pain

> does not meet the requirements of [L]isting 1.02 because the objective evidence of record does not establish that the claimant has a gross anatomical deformity such as a subluxation, contracture, bony or fibrous ankylosis and instability. The record shows that [Harrison's] physical examinations frequently found pain on active and passive range of motion of [her] neck (Exhibit 11F/38). However, there is no imaging or evidence revealing a fracture or dislocation involving [Harrison's] neck. Further, the record does not support that, prior to [her] date last insured, [Harrison] was unable to ambulate effectively or perform fine and gross motor movements effectively.

Accordingly, the ALJ concluded that Harrison's neck pain did not meet or medically equal the criteria of Listing 1.02. R. 79-80.

---

[2] The ALJ did not list Ms. Harrison's neuropathy as a serious impairment and Ms. Harrison did not challenge this finding in her motion papers.

7

Similarly, the ALJ concluded that Harrison's history of chronic lower back pain

> does not meet the requirements of [L]isting 1.04 because the objective evidence of record does not establish that [Harrison] has any compromising of a nerve root or the spinal cord. The overall evidence of record, including treatment records, generally reveals L4-L5 grade 1 spondylolisthesis with left foraminal narrowing and minimal central stenosis, as well as LS-S1 grade 1 spondylolisthesis and an eight millimeter anterior displacement of the LS relative to SI. Imaging also demonstrated multi-level facet joint arthropathy. Further, [Harrison's] treatment providers have often found mostly intact strength and range of motion in [her] extremities (Exhibits 5F/4, 8; l5F/3-4, 7). [Harrison] also exhibited intact sensory functioning (Exhibits 12F/27; 11F/1). Additionally, the record does not contain evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication (Exhibit 4F/13-14).

Thus, the ALJ concluded that Harrison's lower back pain did not meet or medically equal the criteria of Listing 1.04. R. 80.

With regard to Harrison's diabetes, the ALJ found that "[g]enerally, an endocrine disorder meets the requirement of [L]isting 9.00 if it also meets or medically equals a listing in another body system. However, the cumulative effects of [Harrison's] diabetes on her other impairments and body systems do not rise to the level of a listing-level impairment in any body system." R. 80. Thus, the ALJ concluded that Harrison's diabetes does not meet or medically equal the criteria of Listing 9.00. R. 80.

Finally, considering Harrison's severe impairment of obesity, the ALJ noted that "[t]here is no listing for obesity" and that

> [g]enerally, obesity 'meets' the requirements of a [L]isting if there is another impairment that, by itself, meets the requirements of a [L]isting, or an impairment that, in combination with obesity, meets the requirements of a [L]isting. Alternatively, obesity, by itself, may be medically equivalent to a listed impairment, if, for example the obesity is of such a level that it results in an inability to ambulate effectively . . . there may be multiple impairments, including obesity, not one of which meets or equals the requirements of a [L]isting, but the combination of impairments causes signs, symptoms, and laboratory findings that are of equal medical significance to one of the [L]istings. Although [Harrison] is technically obese due to a Body Mass Index (BMI) over 30.0 (Exhibit 11F/35; 2E/2) in this

8

case, [her] obesity, either alone or in combination with [her] other impairments, is not of listing level severity.

The ALJ noted that Harrison "herself does not allege that her obesity contributes to the pain she experiences in her back (Exhibit 5E; Hearing Testimony). While it is reasonable to conclude that Harrison's obesity contributes to the problems [she] is experiencing with her back issues, the combined impairment still does not rise to the level of meeting [L]isting 1.04." R. 80.[3]

The ALJ found that '[t]he objective evidence of record demonstrates a history of treatment for [Harrison's] spinal issues dating back to July of 2013," but observed that the treatment Harrison received for her "back and cervical pain was conservative in nature." R. 82. Despite Harrison "reporting high levels of pain such as nine out of ten and seven out of ten, for her back and neck respectively, [she] was [only] advised to rest and take medications as directed by pain management doctors." *Id.* citing Exhibit 4E/7. The ALJ further noted that at an appointment in December 2014, despite complaining of increased back pain, the treatment notes reveal that Harrison was in no acute distress, had full range of motion, and only mild tenderness of her back. R. 82 citing Exhibit 5F/8.

Moreover, the ALJ noted, Harrison's 2015 MRI revealed only "some degeneration" in Harrison's back. R. 82 citing Exhibit 4F/13-14. In February 2015, following a physical examination that revealed pain and several tender points in her lower back and neck, which resulted in decreased range of motion, Harrison was diagnosed with cervicalgia and a displaced or ruptured cervical disc and lumbar disc. R. 82 citing Exhibit 11F/2. Nevertheless, as the ALJ noted, Harrison's treatment records revealed a "positive response to proper pain management." R. 82.

---

[3] Harrison's medical records indicate that she is 5'4" tall and that her weight generally fluctuated between 130-160 pounds.

The ALJ noted that between 2015 and 2016, Harrison repeatedly reported to Dr. Duran consistent improvements in her pain and functioning with proper pain medication. R. 82 citing Exhibit 11F/1-6; 7F/1-11, 25-57. The ALJ relied on treatment notes from "multiple appointments in 2015," where Harrison reported that "her current regimen was sufficient to allow her to continue with her activities of daily living." R. 82 citing Exhibits 11F/1; 7F/l. Harrison even reported pain reduction between 70 and 80 percent. The ALJ observed that although Harrison "had tender points with decreased range of motion, she had intact sensation and denied loss of balance." R. 82 citing Exhibit 11F/1-2. The ALJ further noted that "[d]uring Harrison's treatment with Dr. Duran, she was advised of other options to treat her pain and limited functioning, such as physical therapy and surgical intervention, but each time the claimant chose to proceed with medication instead of other options." R. 82.

The ALJ accorded "very little weight" to Dr. Duran's conclusory opinion in the Social History portion of his 2015-2016 treatment notes that Ms. Harrison was "disabled due to back and complications of diabetes." R. 84. The ALJ noted that

> Opinions on disability that are not based on the rules and regulations of the Social Security Administration are not binding on the determination here. Further, the opinion is not consistent with the treatment record as a whole and is inconsistent with the treatment notes indicating [that Harrison's] medications are effective in controlling her symptoms, allowing her to resume her activities of daily living.

R. 84 citing Exhibits 11F/2, 4, 6, 16, 19, 25, 28.

Similarly, the ALJ accorded "little weight" to Dr. Duran's opinion as set forth in the March 2018 Disability Impairment Questionnaire. R. 84-85. The ALJ gave the opinion little weight "because of its internal inconsistencies and external inconsistency with the overall record." R. 85. For example, the ALJ noted that although Dr. Duran opined that Ms. Harrison could not sit longer than one hour in an eight-hour day, the record revealed that in 2015 she flew to California to see

her son. R. 85 citing Exhibit 11F/16. Further, the ALJ observed that Dr. Duran's treatment notes reflected that Ms. Harrison "experiences substantial pain relief with her prescribed medications and can sufficiently function." R. 85 citing Exhibit 11F/2, 4, 6, 16, 19, 25, 28.

The ALJ accorded "partial weight" to the opinion of Dr. Goodpasture, the non-examining state consultant, based on "its inconsistency in assessing no severe physical impairments yet limiting [Harrison's] residual functional capacity to a light range of work." R. 84.

Thus, upon considering "the entire record," the ALJ concluded that Harrison had the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b), except that she could only climb ramps and stairs occasionally, and could not climb ladders, ropes, or scaffolds at all. The ALJ found that Harrison could perform occasional balancing, stooping, kneeling, crouching, and crawling; and must avoid concentrated exposure to extreme cold or hazards. R. 80-81. Accordingly, the ALJ concluded that Harrison could return to her past relevant work as travel agent and jewelry salesperson. R. 85.

*Plaintiff Harrison's Claim*

In her motion for summary judgment, Harrison argues that the ALJ erred by failing to properly evaluate the opinion of her treating physician, Dr. Duran. ECF No. 15.[4]

## STANDARD OF REVIEW

This Court's review of the factual findings in disability cases is limited to an inquiry into whether substantial evidence exists to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). Substantial evidence has been defined as

---

[4] The first page of Ms. Harrison's memorandum in support of her motion raises a second issue, namely "whether the ALJ failed to proffer a complete hypothetical question" (ECF. No. 15 at 2), but there is nothing about this claim thereafter, and so, I deem it to be abandoned.

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ. *See Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Although factual findings enjoy such deference, a court is free to review the ALJ's legal analysis and conclusions *de novo*. *See Ingram v. Comm'r*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## DISCUSSION

### A. The Five Step Framework

A person who applies for social security disability benefits must prove his disability before being entitled to those benefits. *See* 20 C.F.R. § 404.1512. In determining disability, the ALJ considers a five-step evaluation process. *See* 20 C.F.R. § 404.1520. First, the claimant must prove he is not currently engaged in substantial gainful activity. *Id.* Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." *Id.* Third, the claimant must show he is disabled by proving that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.*[5] Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC), meaning his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *Id.* At step four, the claimant bears

---

[5] A medically determinable physical impairment is one that can be expected to result in death or that has lasted of can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

the burden of proving that he does not have the RFC to perform past relevant work. *Id.* If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's RFC, age, education, and past work experience, that he is capable of performing other work. *Id.* If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Id.*

### B. Is there Substantial Evidence to Support the ALJ's Determination?

A court may reverse an ALJ's decision "only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Here, Harrison contends that the ALJ did not apply the proper legal standard at Step Three in assessing whether her physical impairments met or were medically equivalent to one of the impairments listed in the federal regulations. Specifically, Harrison contends that the ALJ erred in according "more weight" to the opinions of Dr. Goodpasture, the State's non-examining consultant, than she did to the opinions of Harrison's treating physician, Dr. Duran, when each assessed Harrison's physical limitations.[6]

At the outset, it is unclear that the ALJ gave more weight to Dr. Goodpasture's opinion than she did to Dr. Duran's opinion, as Harrison contends. The ALJ's decision states that she attributed "partial weight" to Dr. Goodpasture's opinion and "little weight" to Dr. Duran because of inconsistencies in both opinions – Dr. Goodpasture's opinions were inconsistent with her own

---

[6] In Harrison's motion for summary judgment, her attorney argues that "the ALJ failed to properly evaluate the opinion of his [sic] treating psychiatrist, Dr. Duran." ECF No. 15 at 12. Notably, Dr. Duran is a medical doctor who treated Harrison monthly to monitor the pain medication she took for her chronic pain syndrome in her back, neck and legs. R. 330-344, 407-482, 520-524. There is no indication in the record that Dr. Duran is a psychiatrist and I find that this was a scrivener's error.

13

findings and Dr. Duran's opinions were inconsistent with his treatment notes and the record as a whole. Thus, the ALJ provided sound reasons for discounting both doctors' opinions regarding Harrison's disability status and her RFC. Nevertheless, even assuming the ALJ gave more weight to Dr. Goodpasture's opinion, she set forth good cause for doing so, as explained below.

In considering whether the ALJ erred in assessing less than controlling weight to Dr. Duran's opinion, I am mindful that because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," their opinions must be afforded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c).

It is well settled that if an ALJ concludes that a treating physician's opinion should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing "good cause" for discounting it. *Hargress v. Soc. Sec. Admin., Comm'r,* 883 F.3d 1302, 1305 (11th Cir. 2018). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id.*

Here, I find that the ALJ properly evaluated the medical evidence, weighed Dr. Duran's opinions, and concluded at Step Three that Harrison's physical impairments did not meet the criteria listed in the federal regulations.

I begin with a review of the SSA's Listing of Impairments (Part A) which specifies the types of spinal conditions required for a disability finding. According to the Listing of Impairments, any "disorder[ ] of the spine" must result in "compromise of a nerve root or spinal cord with [e]vidence of nerve root compression characterized by neuro-anatomic distribution of

pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg testing . . . or [s]pinal arachnoiditis, conformed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia . . . or [l]umbar spinal stenosis resulting in pseudoclaudication . . . resulting in inability to ambulate effectively . . ." 20 C.F.R. Part 404, Subpart P, Appendix 1. None of Harrison's medical records establish that she suffered a spinal impairment of this nature.

On the contrary, Harrison often reported to Dr. Duran that her pain was adequately controlled by her medication and that she was able to perform the activities of everyday life. *See, e.g., Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). Notably, Harrison's pain and her resulting impairment was not so severe as to require surgery. It is also significant that Harrison stopped working in 2015, not due to any physical limitations, but because of "memory, confusion" and being "unable to count money." R. 35. There is nothing in Dr. Duran's treatment notes to suggest that Harrison suffered from the type of spinal disorder that would satisfy the SSA's criteria, much less account for the severe restrictions Dr. Duran recommended for Harrison. For these reasons, the ALJ articulated good cause for attributing little weight to Dr. Duran's conclusory and drastic assessment of Harrison's physical limitations as set forth on the Disability Impairment Questionnaire (a pre-printed form created specifically to assist claimants with pursuing disability benefits). *See Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1304 (S.D. Fla. 2012) (J. Williams) (ALJ had "good reason to discount" doctor's opinion regarding the disabling effect of plaintiff's impairments on a "fill-in-the-blank form" that did not offer any explanation for the conclusions and was unsupported by the treatment notes).

Moreover, Harrison's insured status for disability insurance benefits expired on September 30, 2015, and so she was required to convince the ALJ that she became disabled on or before that date. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (holding that "a claimant is eligible for benefits where she demonstrates disability on or before" the date claimant was last insured). Evidence of a claimant's impairment after the date last insured should be considered by the ALJ, but it is only relevant to the extent it bears "upon the severity of the claimant's condition before the expiration of his or her insured status." *Meek v. Astrue*, No. 308-CV-317-J-HTS, 2008 WL 4328227, at *2 (M.D. Fla. Sept. 17, 2008) (citations omitted).

To this end, much of the evidence Harrison relies on to support her claim that she is disabled, such as her use of a wheelchair in 2018, post-dates the expiration of her insured status and is not indicative of her condition prior to her last insured date in September 2015. Similarly, Dr. Duran's assessment of Harrison's physical limitations and his opinion regarding their severity when he completed the March 2018 questionnaire is not compelling evidence of Harrison's condition between 2013 and 2015. Rather, Dr. Duran's treatment notes during Harrison's period of disability reveal that she was not confined to the strict physical restrictions Dr. Duran later recommended, but that she was carrying on with the activities of daily living and even traveled from Florida to California to visit her son. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion). Therefore, I find that substantial evidence supports the ALJ's decision that Harrison was not disabled prior to September 30, 2015.

## REPORT AND RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that Plaintiff Harrison's Motion for Summary Judgment (ECF No. 15) be **DENIED**, and that Defendant's Motion for Summary Judgment (ECF No. 17) be **GRANTED.**

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers this 4th day of August, 2020, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE